UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MICHAEL DILLMAN, an individual, and, STEPHEN DILLMAN, an individual,**<br><br>Plaintiffs,<br><br>v.<br><br>**TUOLUMNE COUNTY, a political subdivision of the State of California; DEPUTY DAVID VASQUEZ, an individual, and DOES 1-25, inclusive,**<br><br>Defendants. | 1:13-CV-00404 LJO SKO<br><br>**MEMORANDUM DECISION AND ORDER RE DEFENDANTS' MOTION TO DISMISS (DOC. 58)** |

## I. INTRODUCTION

This case concerns the September 18, 2011 arrest of Plaintiffs Michael and Stephen Dillman for alleged "joyriding" and related offenses in connection with their use of a thirteen-foot aluminum fishing boat on Lake Donnell, in Tuolumne County. The Complaint was originally filed in the Superior Court for the County of Tuolumne on February 13, 2013, but was removed by Defendants on March 18, 2013 pursuant to 28 U.S.C. §§ 1441(a) and 1446(a). Doc. 1. Plaintiffs filed an amended complaint on March 24, 2013 (Doc. 45) and a third amended complaint ("TAC") on January 23, 2014. Doc. 47. The TAC names as defendants Tuolumne County (the "County"), Tuolumne County Sheriff's Deputy David Vasquez ("Vasquez"), Marcus Green ("Green"), Paul Harrison ("Harrison"), Eric Roberts ("Roberts"), Troy Silva ("Silva"), Kim Quincy ("Quincy"), and Amanda Roos ("Roos") (collectively, the "Defendants").[1]

---

[1] Because this Order only concerns motions made by Defendants Green, Harrison, Roberts, Silva, Quincy, and Roos (collectively, "Defendants" or "the jail staff"), Plaintiffs' causes of action against other Defendants are not addressed in this Order. All references to "Defendants" in this Order refer to Defendants Green, Harrison, Roberts, Silva, Quincy, or Roos

The TAC's first cause of action, brought under 42 U.S.C. § 1983 ("section 1983"), alleges that the County and Vasquez violated Plaintiffs' federal constitutional rights by, among other things: (1) subjecting both Plaintiffs to unreasonable force in connection with their arrest; (2) subjecting Michael Dillman to a strip search and other "outrageous humiliation" during the booking process; (3) and singling Michael Dillman out for such a "degrading and humiliating" strip search in part because he "was an ordained pastor accused of a crime." TAC ¶¶27-35. The TAC also contains the following related state law claims:

- Violation of California's Bane Civil Rights Act, Cal. Civ. Code § 52.1, against all Defendants (Second Cause of Action);
- Intentional Infliction of Emotional Distress against Defendant Vasquez and "all individually named Defendants" (Fourth Cause of Action); and
- Negligence against Defendant Vasquez and "all individually named Defendants" (Fifth Cause of Action).

TAC at 8-15.

On March 31, 2014, Defendants Green, Harrison, Roberts, and Silva ("the Green Defendants") filed a motion to dismiss the TAC under Fed. R. Civ. P. 12(b)(6), a motion for a more definite statement under Fed. R. Civ. P. 12(e), and a motion to strike portions of the TAC under Fed. R. Civ. P. 12(f). Docs. 58. The Green Defendants assert that the TAC should be dismissed in its entirety under Fed. R. Civ. Pro. 12(b)(6) because it fails to demonstrate facts that would entitle Plaintiffs to relief and is barred by the applicable statute of limitations. The Green Defendants also assert they are entitled to a more definite statement from Plaintiffs because they have improperly combined several claims and each of the Defendants. The Green Defendants also move to strike the reference to Holly Kelso in paragraph 7 and the allegations in paragraph 55(a)-(f) of the TAC as immaterial to any claims brought against them.

Also on March 31, 2014, Defendants Quincy and Roos filed a motion to dismiss. Doc 59.

---

unless otherwise specified.

Defendants Quincy and Roos assert that the TAC should be dismissed under Fed. R. Civ. P. 12(b)(5) because its service on them was improper. Defendants Quincy and Roos further assert that the TAC should be dismissed under Fed. R. Civ. P. 12(b)(6) because it is barred by the applicable statute of limitations and it fails to demonstrate facts that would entitle Plaintiffs to relief.

On April 23, 2014, Plaintiffs filed oppositions to Defendants' motions.[2] Plaintiffs assert that Defendants "repeatedly misstate[d] and mischaracterize[d] the facts contained in the TAC" in their motions. Doc. 66 at 6; Doc. 65 at 6. Plaintiffs concede that "defendants Quincy and Roos were served one day after the Court's 45 day deadline" for service, but insist that the Court should allow service on Defendants Quincy and Roos in the interest of justice. Doc. 66 at 10. Plaintiffs argue that the TAC is not time-barred. Plaintiffs assert that the TAC complied with the applicable statutes of limitations. According to Plaintiffs, California Code of Civil Procedure §§ 474 and 583.210 ("section 474" and "section 583.210") are controlling, not Fed.R.Civ.P. 15, as Defendants maintain, and under those statutes, the TAC was timely filed. Doc. 66 at 10-12.

Plaintiffs assert they have stated sufficient facts to entitle them to relief against Defendants Quincy and Roos for all of their causes of action. Doc. 66 at 8-17. However, Plaintiffs concede that their negligence cause of action could be better pled and therefore "request this Court grant them leave to amend the negligence cause of action so as to provide a more definite statement pursuant to F.R.C.P. 12(e)." Doc. 66 at 22. Plaintiffs further concede that Defendants correctly note that Holly Kelso was improperly named in the TAC and that the irrelevant allegations contained in paragraph 55(a)-(f) of the TAC should be removed. Doc. 66 at 17. Finally, Plaintiffs request leave to amend "the negligence cause of action to remove irrelevant material and separate out the alleged negligence of [Vasquez] . . . from that of the individually named jail staff[, but] request the Court deny [Defendants'] request for a more definite statement as to the remainder of the TAC." Doc. 66 at 23.

Plaintiffs' opposition to the Green Defendants' motion to dismiss contains largely the same

---

[2] Plaintiffs filed oppositions on April 22, 2014, and amended oppositions on April 23, 2014. *See* Docs. 65, 66.

arguments as those found in Plaintiffs' opposition to Defendants Quincy and Roos's motion to dismiss. Plaintiffs claim the Green Defendants' motion to dismiss contains the same factual misstatements and mischaracterizations of the TAC as those in Defendants Quincy and Roos's motion to dismiss. Doc. 65 1-4. Likewise, Plaintiffs assert the TAC is not barred by the applicable statutes of limitations for the same reasons and that all of their causes of actions against Defendants (except for negligence) demonstrate sufficient facts to state claims for relief under Fed.R.Civ.P. 12(b)(6). Doc. 65 at 10-14. Plaintiffs also concede that Holly Kelso was improperly named and request leave to amend the TAC to remove the irrelevant allegations contained in paragraph 55(a)-(f) and to separate the claims against Vasquez from the Green Defendants. Doc. 65 at 14-15.

The Defendants filed replies on April 25, 2014. Doc. 67, 68. Defendant argue that even if Plaintiffs' claims against them were timely filed under section 474 and section 583.210, "Plaintiffs can offer no legitimate reason why they were unable to obtain the identities of [the Green Defendants] earlier." Doc. 67 at 2; Doc. 68 at 2. The Green Defendants therefore argue that their motion to dismiss should be granted due to Plaintiffs' "fail[ure] to act diligently in securing the identities of the Doe defendants." Doc. 67 at 3; Doc. 68 at 3. The Green Defendants reiterate their arguments that Plaintiffs have failed to allege sufficiently sufficient facts to state claims for any of their alleged causes of action. Doc. 67 at 3-6; Doc. 68 at 3-6.

## II. BACKGROUND[3]

On September 18, 2011, after conducting Sunday morning service at his church in Manteca, Pastor Michael Dillman, and his son, Stephen Dillman, drove to Lake Donnell in Tuolumne County, California, to go fishing. TAC ¶ 10. As was their custom and practice over the years, Plaintiffs placed their own motor on a thirteen-foot Valco aluminum boat at Lake Donnell. TAC ¶ 11. There was no registration, insignia, or identification on the boat. *Id*. According to Plaintiffs, for the last thirty years they and other fisherman have left aluminum boats moored at Lake Donnell, and it has been common

---

[3] These background facts are drawn exclusively from the FAC, the truth of which must be assumed for purposes of a Rule 12(b)(6) motion to dismiss.

practice to pack in one's own motor, place it on one of the moored boat, take the boat fishing, and then return the boat to the dock. *Id*. In fact, in or around 2010 Michael Dillman purchased an aluminum boat identical to the boat Plaintiffs used on September 18, 2011, and left that boat at Lake Donnell for his own use and for use by other fishermen. *Id*. Two aluminum boats purchased by Plaintiffs are moored currently at Lake Donnell. *Id*.

While Plaintiffs were out on Lake Donnell on September 18, 2011, an employee of Tri-Dam Project, the entity that operates the facility at Lake Donnell, called the Tuolumne County Sheriff's Department to report seeing two unidentified men place a motor on an aluminum boat that allegedly belonged to Tri-Dam Project. TAC ¶ 12. The men then took the boat out fishing. *Id*. The Tri-Dam Project employee viewed these events on surveillance cameras at Lake Donnell. *Id*.

After returning from fishing, Plaintiffs were met by Defendant Tuolumne County Sheriff's Deputy David Vasquez, who ordered them up a ladder at the dam facility and informed them they were under arrest for joyriding in a boat, trespass, and vandalism. TAC ¶ 13. Defendant Vasquez then handcuffed Plaintiffs with their hands behind their backs, in a "high, tight and painful manner." *Id* Michael Dillman explained to Deputy Vasquez that he was a pastor, a community leader, and that he was unarmed and posed no threat to him. *Id*. Michael Dillman also explained to Deputy Vasquez that he was a Vietnam War veteran and suffered from Post-Traumatic Stress Disorder ("PTSD") and extreme claustrophobia. *Id.* At the time of the incident, Michael Dillman was 63 and suffered from arthritic shoulder pain, which was exacerbated by the high and tight handcuff placement behind his back. *Id.* Upon being cuffed, he began to feel pain immediately, which escalated to "an excruciating level." *Id.*

Michael Dillman pled with Deputy Vasquez to cite and release him and his son and to refrain from placing them into the back of the police vehicle with their arms cuffed behind their backs. TAC ¶ 14. Michael Dillman told Deputy Vasquez that he feared if he were placed in such a position in the back of a vehicle with the windows rolled up, he would suffer a PTSD episode. *Id.* He pled with Deputy Vasquez to loosen the cuffs to reduce the pain or to cuff him in front and to crack the window in the back of the vehicle so he could get air. *Id*. Deputy Vasquez finally agreed to "double cuff" Michael

Dillman; however, his hands remained behind his back and the cuffs were extremely tight on his wrists. *Id*.

Plaintiffs were "shoved" into the back of Deputy Vasquez's vehicle and immediately transported to the Tuolumne County Jail in Sonora, California, over an hour drive from Lake Donnell. TAC ¶ 15. A portion of the drive was on a bumpy road and both men were cuffed behind their backs in an extremely painful manner. *Id*. Plaintiff Michael Dillman continued to plead with Deputy Vasquez to crack the window and loosen his handcuffs. *Id*. Instead of doing so, Deputy Vasquez cursed Plaintiff Michael Dillman and threatened to "hog tie his ass!" *Id*. Plaintiff Michael Dillman then suffered a "PTSD episode" during the transport to the Tuolumne County Jail. *Id*.

According to Plaintiffs, when they arrived at the Tuolumne County Jail they were cursed and humiliated by Tuolumne County Sheriff's Department personnel. TAC ¶ 16. Plaintiffs allege that Defendants Green, Harrison, Roberts, Silva, Quincy, and Roos were Tuolumne County Sheriff's deputies or personnel of the County involved with Plaintiffs' detention. Plaintiffs claim that Michael Dillman was called a "psycho preacher" and was forced to completely undress in the presence of two female deputies, who openly commented on his nakedness. *Id*. Stephen Dillman was not strip-searched. *Id*. Michael Dillman was then separated from his son and placed naked in a small padded cell on cold concrete and given no way to cover himself from his nakedness or protect himself from the cold. *Id*. After approximately two hours in that padded cell, Michael Dillman was returned to the holding cell with his son. *Id*.

Plaintiffs were released from custody at approximately 1:00 a.m. on September 19, 2011. TAC ¶ 17. According to Plaintiffs, Jail personnel refused to return money that had been confiscated from them during the booking process. *Id*. Instead, Plaintiffs were given a voucher card, which required them to wait until the banks opened in the morning before they could access any money. *Id*.

Tuolumne County chose to prosecute Plaintiffs, and a criminal jury trial commenced on February 6, 2012. TAC ¶ 18. Plaintiffs were acquitted of all charges. *Id*.

### III. **STANDARD OF DECISION**

6

A motion to dismiss pursuant to Fed R. Civ. P. 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. A 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD v. Behrens,* 546 F.3d 580, 588 (9th Cir. 2008).

To survive a 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Thus, "bare assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements' . . . are not entitled to be assumed true." *Iqbal*, 556 U.S. at 681. In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562. To the extent that the pleadings can be cured by the allegation of additional facts, the plaintiff should be afforded leave to amend. *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

## IV. DISCUSSION

### A. Service of the TAC on Defendants Quincy and Roos

Rule 12(b)(5) authorizes a motion to dismiss for "insufficiency of service of process." Where the validity of service is contested by a Rule 12 motion, the burden is on plaintiff to establish the validity of service. *Norlock v. City of Garland*, 768 F.2d 654, 656 (5th Cir. 1985); *Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 488 (3d Cir. 1993). If plaintiff shows good cause for the failure to effect timely service, "the court must extend the time for service for an appropriate period." Fed.R .Civ.P. 4(m). Absent prejudice to defendant or anyone else, or to the court itself, it "cannot be an abuse of discretion" to extend the time for service even after expiration of the 120–day period. *Mann v. American Airlines*, 324 F.3d 1088, 1090 (9th Cir. 2003); *see also United States v. 2,164 Watches*, 366 F.3d 767, 772–73 (9th Cir. 2004) (instructing the district court to consider the prejudice when exercising its discretion to determine what action to take in light of the untimely service).

Defendants Quincy and Roos assert that the TAC should be dismissed because Plaintiffs improperly served it on them on March 14, 2014, one day after the deadline established in the Court's January 27, 2014 Order. (Doc. 48.) Plaintiffs concede that service on Defendants Quincy and Roos was insufficient in that it was one day late. Plaintiffs request that the Court allow service here in the interest of justice because they were diligent in their efforts to serve all Doe Defendants and Defendants Quincy and Roos will not be prejudiced by a one-day delay in service. Doc. 66 at 9. Defendants do not claim that permitting service on Defendants Quincy and Roos will prejudice them or the Court. Rather, Defendants simply argue the TAC should be dismissed as to Defendants Quincy and Roos under Fed. R. Civ. P. 12(b)(5) because it was served one day late per the Court's Order. Defendants Quincy and Roos have failed to show any prejudice as a result of the delay in service. Because no prejudice is shown, the Court finds that the extension of time for service of process is harmless. Accordingly, Defendants Quincy and Roos's motion to dismiss the TAC under Fed. R. Civ. P. 12(b)(5) is DENIED.

### B. Timeliness of the TAC

Defendants assert that the TAC must be dismissed because the statute of limitations for each of

8

Plaintiffs' causes of action is two years and Defendants were not named until approximately 2.5 years after Plaintiffs' alleged injuries arose, which renders the TAC untimely. Defendants note that the TAC may be considered timely under Fed. R. Civ. P. 15(c) if it relates back to the original Complaint; however, they assert that it does not as a matter of law. Defendants maintain that "[u]nder Rule 15, amendments adding a party only relate back when there was a 'mistake' in identifying the defendant . . . [and] a Doe amendment does not involve a mistake in identifying the correct defendant." Thus, according to Defendants, "the TAC simply substituted [them] . . . for previously named 'Doe' defendants," which they assert is insufficient for the TAC to relate back such that it would be considered timely under Fed. R. Civ. P. 15(c).

Plaintiffs argue that Fed. R. Civ. P. 15(c) does not apply. Rather, they assert that sections 474 and 583.210, which provide three-year statutes of limitations, are the applicable statutes of limitations. Thus, Plaintiffs claim the TAC was timely filed in January 2014, approximately 2.5 years after the events that gave rise to the causes of action against Defendants.

Plaintiffs are correct. "When dealing with California statutes of limitation in the context of substituting in Doe defendants, Cal. Civ. Proc. § 474 may apply instead of Fed. Rule Civ. Proc. 15." *Soto v. Castlerock Farming & Transport, Inc.*, No. CIV-F-09-0701, 2013 WL 1222055, at *5 (E.D. Cal. Mar. 25, 2013). "The Ninth Circuit has applied § 474 . . . to claims brought under 42 U.S.C. § 1983 because the statute of limitations for those actions is governed by California law . . . . Therefore, California's law governing relation-back of claims . . . applies to state law claims over which a federal court has supplemental jurisdiction." *Huskey v. Ahlin*, No. 1:09-CV-01576, 2011 WL 5838121, at *6 (E.D. Cal. Nov. 21, 2011) (citing *Lindley v. Gen. Elec. Co.*, 780 F.2d 797 (9th Cir. 1986)). Accordingly, the three-year statute of limitations provided by section 474 applies to Plaintiffs' claims against Defendants.

Under section 474, "the substitution of a named party for a Doe defendant is deemed to relate back to the original complaint so long as the plaintiff was 'genuinely ignorant' of the newly added defendant's identity." *Hardesty v. Sacramento Metro. Air Quality Mgmt. Dist.*, 935 F.Supp.2d 968, 980

(E.D. Cal. Mar. 25, 2013) (citing *Woo v. Superior Court*, 75 Cal.App.4th 169, 177 (1999)). If the plaintiff is genuinely ignorant of the newly added defendant's identity at the time the original complaint is filed, the plaintiff has three years to determine the identity of the Doe defendant, amend the complaint, and effect its service on the identified defendant. *Lindley*, 780 F.2d at 799 (citing section 474). "If the requirements of section 474 are satisfied, the amended complaint substituting a new defendant for a fictitious Doe defendant filed after the statute of limitations has expired is deemed filed as of the date the original complaint was filed." *Woo*, 75 Cal. App. 4th at 176 (citation omitted).

Here, Plaintiffs alleged in their original Complaint and their second amended complaint that they did not know the identity of a number of Doe defendants involved in their detention. Plaintiffs determined the identity of the Doe defendants, amended their complaint to individually name the defendants, and served the TAC on them within less than a year of filing their original Complaint. Accordingly, the TAC was timely filed under section 474. The Court therefore DENIES Defendants' motion to dismiss the TAC as untimely filed.

**C.     Section 1983 Claim.**

The First Cause of Action alleges that all Defendants violated section 1983. Section 1983 creates a cause of action "against any person acting under color of law who deprives another of any rights, privileges, or immunities secured by the Constitution and laws of the United States." *Southern Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 887 (9th Cir. 2003). The TAC alleges all Defendants violated Plaintiffs' First, Fourth, and Fourteenth Amendment rights. Defendants Quincy and Roos move to dismiss Plaintiffs' section 1983 claim against them on the ground that "there are no allegations specifically connecting either [of them] . . . to the harm alleged." Doc. 59-1 at 15. According to Defendants Quincy and Roos, "Plaintiff[s] ha[ve] done nothing more than plead an 'unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Id.* (quoting *Iqbal*, 556 U.S. at 1949).

**1.     Section 1983 Claims Against the Defendants**

As noted in the Court's July 23, 2013 Order, "[t]he factual allegations [in the FAC] do not suggest that any additional defendants were involved in Plaintiffs' arrest and transport. Accordingly, the

Doe Defendants could only be involved in the strip search and related conduct at the Tuolumne County Jail." The same is true of the TAC's allegation against Defendants.

### a. **Strip Search.**

The section 1983 claim alleges that the strip search of Michael Dillman violated his Fourth Amendment right to be free from an unreasonable search of his person. TAC ¶ 30. The TAC also alleges that the strip search violated Michael Dillman's Fourteenth Amendment rights to "due process of law and equal protection, in that he and his son . . . were both pre-trial detainees arrested on suspicion of the same non-violent misdemeanors . . . and yet only Plaintiff [Michael Dillman] was singled out to be subjected to the humiliating strip search and naked confinement." TAC ¶ 31. Finally, the FAC alleges Michael Dillman "was singled out for the degrading and humiliating strip search in part because he was an ordained pastor accused of a crime," in violation of his First Amendment right "to the free expression and observance of his religious convictions." *Id*.

Personal liability under section 1983 "arises only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). The TAC alleges that the Green Defendants and Defendants Quincy and Roos were involved in "ordering [Michael Dillman] . . . to strip off his clothes in the presence of two (2) female . . . jail personnel who were not participating in the search," which subjected Michael Dillman "to outrageous humiliation and an unreasonable search of his person." TAC ¶ 30. Plaintiffs allege this "constituted a reckless indifference toward [Michael Dillman]," *id.*, and that Defendants Quincy and Roos were "personally . . . involved with the humiliation and the degradation of plaintiff [Michael Dillman] via their presence and commentary during an illegal strip search." Doc. 66 at 17.

**1. Plaintiffs' Section 1983 Claim Against Defendants Quincy and Roos**

Plaintiffs state that that all Defendants, including Defendants Quincy and Roos, "violated Plaintiff [Michael Dillman's] Constitutional rights under the Fourth Amendment by ordering him to strip off his clothes." TAC ¶ 30. Plaintiffs also state, however, that Defendants Quincy and Roos "were not participating in the search." TAC ¶ 30. The Court construes the TAC to allege that Defendants

11

Quincy and Roos did not order Plaintiff Michael Dillman to strip off his clothes and were not involved with the search itself. *See* Doc. 66 at 18 (Defendants Quincy and Roos "are specifically alleged to have [been] present as their male counterparts forced plaintiff [Michael Dillman] to take off his clothes, and then they mocked and humiliated him by ridiculing his naked body, all in violation of his civil rights").

Thus, the thrust of Plaintiffs' section 1983 claim against Defendants Quincy and Roos is that, as females, their presence during Michael Dillman's strip search and "commenting in a derogatory fashion and ridiculing his naked body" amount to a violation of his constitutional rights. Doc. 66 at 17; *see also* TAC ¶¶ 18, 30, 32. As noted, Plaintiffs acknowledge that Defendants Quincy and Roos did not participate in Michael Dillman's strip search. TAC ¶¶ 18, 30, 32; *see also* Doc. 66 at 18. Plaintiffs contend, however, that their presence and comments during the strip search amount to participation in a section 1983 violation. *See* Doc. 66 at 17.

As alleged, Defendants Quincy and Roos's mere presence during Michael Dillman's strip search cannot amount to a Constitutional violation under section 1983. Under section 1983, an individual deprives the constitutional right of another "'if he [or she] does an affirmative act, participates in another's affirmative act, or omits to perform an act which he [or she] is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). Plaintiffs do not allege that Defendants Quincy and Roos affirmatively took part in Michael Dillman's strip search, nor do Plaintiffs allege that Defendants Quincy and Roos failed to perform an act they were required to do. Rather, Plaintiffs assert their presence alone led to participation in the other Defendants' affirmative acts that deprived Plaintiffs of their Constitutional rights.

Plaintiffs further assert that Defendants Quincy and Roos violated section 1983 when they verbally "mocked and humiliated" Michael Dillman "by ridiculing his naked body" during his strip search. Doc. 66 at 12.

The TAC contains two separate allegations concerning Defendants Quincy and Roos's commentary during Michael Dillman's strip search that Plaintiffs assert amount to a deprivation under

section 1983. Paragraph 18 of the TAC states that Defendants Quincy and Roos "openly commented on [Michael Dillman's] nakedness." Paragraph 30 of the TAC states that Michael Dillman was subjected "to having his nude body ridiculed," and Plaintiffs clarify in their opposition that Defendants Quincy and Roos were the individuals who allegedly "ridiculed" his nude body. Doc. 66 at 12.

"The Fourteenth Amendment prohibits punishment of pretrial detainees." *Demery v. Arpaio*, 378 F.3d 1020, 1023 (9th Cir. 2004) (citing *Bell v. Wolfish*, 441 U.S. 520, 539 (1979)). Conduct not reasonably related to legitimate penological objectives constitutes impermissible punishment. *See id.* at 1028-29; *see also Bell*, 441 U.S. at 538. "[T]o constitute punishment, the harm or disability caused by the government's action must either significantly exceed, or be independent of, the inherent discomforts of confinement." *Demery*, 378 F.3d at 1010.

Viewing the facts in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have demonstrated sufficient facts to state a claim against Defendants Quincy and Roos under section 1983. Plaintiffs assert that Defendants Quincy and Roos "ridiculed" his naked body during the strip search. Defendants have not proffered any legitimate penological interest in subjecting a detainee to ridicule during a strip search, and the Court cannot find one. Nor have Defendants explained how the presence of female officers during the strip search of a male detainee furthered a legitimate penological interest. Further, ridicule may "be independent of . . . the inherent discomforts of confinement." *Id.* Accordingly, the Court finds that Plaintiffs have stated a claim for relief against Defendants Quincy and Roos under section 1983 for impermissibly subjecting them to punishment. The Court therefore DENIES Defendants Quincy and Roos's motion to dismiss Plaintiffs' section 1983 claim.

**2. Plaintiffs' Section 1983 Claim Against the Green Defendants**

Plaintiff s allege that the Green Defendants violated their Constitutional rights in a number of ways such that they are liable under section 1983. Plaintiffs allege that the Green Defendants cursed at and humiliated Plaintiffs, called Michael Dillman a "psycho preacher," forced him to disrobe, impermissibly search him, and placed him in a cell naked for over two hours. Defendants assert none of their conduct violated Plaintiffs' Constitutional rights.

Defendants' strip searching Michael Dillman incident to detention for a non-violent crime did not necessarily violate his Constitutional rights. *See Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 132 S. Ct. 1510 (2012). As discussed, however, the Fourteenth Amendment forbids punishment of pretrial detainees, which occurs when a pretrial detainee is subjected to conduct that serves no penological purpose that goes beyond the inherent discomforts of confinement. Defendants have provided no argument to rebut Plaintiffs' assertion that Defendants violated Michael Dillman's Constitutional rights when they placed him in a cell naked for over two hours for no apparent reason. Accordingly, the Court DENIES the Green Defendants' motion to dismiss Plaintiffs' section 1983 claim.

### D.     State Law Claims.

#### 1.     Section 52.1.

California Civil Code Section 52.1, known as the California Bane Act, addresses civil actions for protection of rights and remedies for violations of protected rights:

> (a) If a person or persons, whether or not acting under color of law, interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state, the Attorney General, or any district attorney or city attorney may bring a civil action for injunctive and other appropriate equitable relief in the name of the people of the State of California, in order to protect the peaceable exercise or enjoyment of the right or rights secured . . .
>
> (b) Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with, as described in subdivision (a), may institute and prosecute in his or her own name and on his or her own behalf a civil action for damages . . .

A section 52.1 plaintiff must demonstrate that the constitutional violation "occurred and that the violation was accompanied by threats, intimidation or coercion within the meaning of the statute." *Barsamian v. City of Kingsburg*, 597 F. Supp. 2d 1054, 1057 (E.D. Cal. 2009). "The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., 'threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under

the law or to force the plaintiff to do something that he or she was not required to do under the law." *Austin B. v. Escondido Union School Dist.*, 149 Cal. App. 4th 860, 883 (2007).

The Green Defendants assert that "Plaintiffs have failed to allege facts demonstrating the specific acts committed . . . that violated Plaintiffs' constitutional rights." Doc. 58-1 at 10. Plaintiffs allege that the Green Defendants violated section 52.1 when they strip searched Michael Dillman and placed him in a cell naked for over two hours. The Court finds that the alleged coercion the Green Defendants exerted in ordering Michael Dillman to remove his clothes, searching him, and placing him in a cell naked is sufficient to state a claim against the Green Defendants under section 52.1. Moreover, as explained in the Court's May 7, 2013 Order, "[w]here Fourth Amendment unreasonable seizure or excessive force claims are raised and intentional conduct is at issue, there is no need for a plaintiff to allege a showing of coercion independent from the coercion inherent in the seizure or use of force." *Dillman v. Tuolumne Cnty.*, 1:13-CV-00404 LJO, 2013 WL 1907379, at *21 (E.D. Cal. May 7, 2013). This rule applies to Plaintifs' claims against the Green Defendants of excessive force and unreasonable strip search. Accordingly, the Court DENIES the Green Defendants' motion to dismiss Plaintiffs' section 52.1 claim.

As discussed, Plaintiffs allege that Defendants Quincy and Roos did not order Plaintiff Michael Dillman to strip off his clothes and did not participate in the search itself. Plaintiffs do not allege that Defendants Quincy and Roos interfered with Plaintiffs' rights "by threats, intimidation, or coercion." Rather, Plaintiffs allege that "the coercion exerted by [D]efendants [Quincy and Roos] against . . . [Michael Dillman] was to remain present as his clothes were forcibly removed under color of law and to ridicule and mock his naked body." Plaintiffs provide no support for the assertion that the mere presence of Defendants Quincy and Roos during an allegedly illegal strip search and their allegedly humiliating comments can amount to a violation of section 52.1. Accordingly, the Court GRANTS Defendants Quincy and Roos's motion to dismiss Plaintiffs' section 52.1 action against them WITH LEAVE TO AMEND.

**E.     Intentional Infliction of Emotional Distress.**

The Fourth Cause of Action is for intentional infliction of emotional distress ("IIED") against all

Defendants based upon the arrest and transport of both Plaintiffs and the strip search of Michael Dillman.[4] As discussed, Defendants Quincy and Roos were involved only in Plaintiffs' detention and only to the extent that they were present and made comments regarding Michael Dillman's body during his strip search. Plaintiffs allege that Defendants Quincy and Roos's presence and comments give rise to a claim for IIED.

Under California law, "[a] cause of action for intentional infliction of emotional distress exists when there is (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (internal quotation omitted). In addition to the requirement that the conduct be intentional and outrageous, the conduct must have been directed at Plaintiff or occur in the presence of Plaintiff, of whom Defendant was aware. *Simo v. Union of Needletrades, Industrial & Textile Employees*, 322 F.3d 602, 622 (9th Cir. 2003).

Plaintiffs allege they have pled sufficient facts to satisfy all three factors. Defendants Quincy and Roos assert that Plaintiffs have not pled with specificity that Defendants Quincy and Roos intentionally engaged in extreme and outrageous behavior.

Plaintiffs allege that Defendants "engaged in extreme and outrageous conduct . . . with the intention of causing . . . severe emotional distress." TAC ¶ 49. The allegedly extreme and outrageous behavior was the Green Defendants' forcing Michael Dillman to disrobe, strip searching him, placing him in a cell naked for over two hours, ridiculing his naked body, and calling him a "psycho preacher." Plaintiffs further allege that "[a]s an actual, legal and proximate result of the acts of [Defendants] . . . Plaintiffs suffered humiliation, mental anguish, and/or emotional and/or physical distress." TAC ¶ 51.

The Court finds that Plaintiffs have demonstrated specific facts to state a claim of IIED against Defendants. The only element Plaintiffs' IIED claim that Defendants challenge is whether Defendants'

---

[4] This claim is asserted by both Michael and Stephen Dillman. Defendants do not address whether Stephen Dillman is a proper plaintiff, so the Court will not address that issue at this time.

conduct was sufficiently extreme and outrageous. A reasonable trier of fact could find that Defendants' conduct was extreme and outrageous. Accordingly, the Court DENIES the Defendants' motion to dismiss Plaintiffs claim against them for IIED.

**F.      Negligence.**

The Fifth Cause of Action alleges a claim for negligence against all Defendants for breaching their "duty of reasonable care by failing, neglecting, and/or refusing to properly and fully discharge their duties and/or responsibilities." TAC ¶ 55. Plaintiffs concede, however, that the claim is confusing pled in that it confuses the allegedly negligent conduct of Defendants with that of other Defendants. Plaintiffs request leave to amend "to separate out the alleged negligence of [Defendant Vasquez] . . . from the alleged negligence of that of the named jail staff," and to remove references to the County from the claim. The Court GRANTS Defendants' motion to dismiss Plaintiffs' negligence cause of action against them WITH LEAVE TO AMEND.

**G.      Motion to Strike**

Defendants move to strike a number of statements from the TAC. Plaintiffs agree that some, but not all of the allegations should be stricken. Accordingly, the Court GRANTS Defendants' motion to strike from the TAC:

- The reference to "Holly Kelso" in ¶ 7 of the TAC.
- All allegations against the County in ¶ 55(a)-(f) of the TAC.

Defendants also move to strike references to Defendants from the allegations contained in Plaintiffs' negligence claim. Plaintiffs request that they be granted leave to amend "to remove irrelevant material and separate out the alleged negligence of [Defendant Vazquez] . . . from that of the individually named jail staff." For the reasons discussed above, the Court DENIES the Defendants' motion to strike. The Court GRANTS Plaintiffs' request for leave to amend the negligence cause of action.

**H.      Request For a More Definite Statement.**

In the alternative, Defendants request a more definite statement. Prior to filing a responsive

1  pleading, a party may move under Federal Rule of Civil Procedure 12(e) for a more definite statement of
2  a pleading if it "is so vague or ambiguous that the party cannot reasonably prepare a response." The
3  purpose of Rule 12(e) is to provide relief from a pleading that is unintelligible, not one that is merely
4  lacking detail. *Neveu v. City of Fresno*, 392 F. Supp. 2d 1159, 1169 (E.D.Cal.2005). Where the
5  complaint is specific enough to apprise the responding party of the substance of the claim being asserted
6  or where the detail sought is otherwise obtainable through discovery, a motion for a more definite
7  statement should be denied. *See Famolare, Inc. v. Edison Bros. Stores, Inc*., 525 F. Supp. 940, 949 (E.D.
8  Cal. 1981) ("Due to the liberal pleading standards in the federal courts embodied in Federal Rule of
9  Civil Procedure 8(e) and the availability of extensive discovery, the availability of a motion for a more
10 definite statement has been substantially restricted."). Thus, motions pursuant to Rule 12(e) are
11 generally "viewed with disfavor and are rarely granted[.]" *Sagan v. Apple Computer, Inc*., 874 F. Supp.
12 1072, 1077 (C.D. Cal. 1994).

Defendants request a more definite statement because Plaintiffs have pled multiple claims in each cause of action and because the allegations and damages relating to the two Plaintiffs are "inextricably intertwined." 59-1 at 18. Defendants requested a more definitive statement with regard to the FAC for essentially the same reasons, which the Court denied. The TAC provides sufficient detail for Defendants to frame a response. Likewise, while the TAC could have done a better job of isolating the claims of each Defendant, Defendants had no trouble discerning the nature of these allegations for the purposes of framing this motion to dismiss.

Defendants' request for a more definite statement is DENIED.

### V. CONCLUSION AND ORDER

For the reasons set forth above,

(1) Defendants' motion to dismiss is GRANTED IN PART AND DENIED IN PART AS SET FORTH ABOVE;

(2) Defendants' request for a more definite statement is DENIED; and

(3) Plaintiffs shall file any amended complaint within twenty (20) days of electronic service of

this order. This will be the last permitted attempt to file a fully compliant amended complaint.

This Court, bluntly, is beyond busy. It neither has the time to re-write complaints, nor does it have a duty in that regard.

IT IS SO ORDERED.

Dated:  **April 30, 2014**          **/s/ Lawrence J. O'Neill**
UNITED STATES DISTRICT JUDGE