**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **MICHAEL DILLMAN, an individual, and, STEPHEN DILLMAN, an individual,**<br><br>　　　　　**Plaintiffs,**<br><br>　　　　v.<br><br>**DEPUTY DAVID VASQUEZ, an individual, et al.,**<br><br>　　　　　**Defendants.** | **1:13-CV-00404 LJO SKO**<br><br>**MEMORANDUM DECISION AND ORDER RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. 86)** |

## I. PRELIMINARY STATEMENT TO PARTIES AND COUNSEL

Judges in the Eastern District of California carry the heaviest caseloads in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. Given the shortage of district judges and staff, this Court addresses only the arguments, evidence, and matters necessary to reach the decision in this order. The parties and counsel are encouraged to contact the offices of United States Senators Feinstein and Boxer to address this Court's inability to accommodate the parties and this action. The parties are required to reconsider consent to conduct all further proceedings before a Magistrate Judge, whose schedules are more accommodating to parties than that of U.S. District Judge Lawrence J. O'Neill, who must prioritize criminal and older civil cases.

Civil trials set before Judge O'Neill trail until he becomes available and are subject to suspension mid-trial to accommodate criminal matters. Civil trials are no longer reset to a later date if Judge O'Neill is unavailable on the original date set for trial. Moreover, this Court's Fresno Division randomly and without advance notice reassigns civil actions to U.S. District Judges throughout the nation to serve as visiting judges. In the absence of Magistrate Judge consent, this action is subject to reassignment to a U.S. District Judge from outside the Eastern District of California.

## II. <u>INTRODUCTION</u>

This case concerns the September 18, 2011 arrest of Plaintiffs Michael Dillman ("Michael") and Stephen Dillman ("Stephen") (collectively, "Plaintiffs") for alleged "joyriding" and related offenses in connection with their use of a thirteen-foot aluminum fishing boat on Donnell Lake, in Tuolumne County. The Complaint was originally filed in the Superior Court for the County of Tuolumne on February 13, 2013, but was removed by Defendants on March 18, 2013 pursuant to 28 U.S.C. §§ 1441(a) and 1446(a). Doc. 1. Plaintiffs filed an amended complaint on March 24, 2013 (Doc. 45), a third amended complaint on January 23, 2014 (Doc. 47), and a fourth amended complaint ("the FAC")—currently the operative complaint—on May 14, 2014. Doc. 70. The FAC names as defendants Tuolumne County (the "County"[1]) and Tuolumne County Sheriff's Deputy David Vasquez ("Vasquez"), Marcus Green ("Green"), Paul Harrison ("Harrison"), Kim Quincy ("Quincy"), Eric Roberts ("Roberts"), Amanda Roos ("Roos"), and Troy Silva ("Silva") (collectively, "Defendants"[2]).

The FAC's first cause of action, brought under 42 U.S.C. § 1983 ("section 1983"), alleges that Defendants violated Plaintiffs' federal constitutional rights. The FAC also contains the following related state law claims:

- Violation of California's Bane Civil Rights Act, Cal. Civ. Code § 52.1, against Green, Harrison, Roberts, and Silva (Second Cause of Action);

- Battery, against Vasquez (Third Cause of Action);

- Intentional Infliction of Emotional Distress, against all Defendants (Fourth Cause of Action); and

---

[1] The Court dismissed the County from this action. *See* Doc. 77 at 4. As such, the County is no longer a defendant in this case.

[2] The parties refer to Defendants at the jail (*i.e.*, all Defendants except Vasquez) as "the jail defendants" or "the officers." The Court will refer to them as "the jail Defendants."

1        • Negligence, against all Defendants (Fifth Cause of Action).

2    FAC at 1, 8-17.

3        Currently before the Court is Defendants' motion for summary judgment. Doc. 86. The Court

4    finds it appropriate to rule on the motion without oral argument. *See* Local Rule 230(g). For the

5    following reasons, the Court GRANTS IN PART and DENIES IN PART Defendants' motion for

6    summary judgment (Doc. 86).

7                    **III.      FACTUAL AND PROCEDURAL BACKGROUND[3]**

8        **A.      Vasquez Arrests Plaintiffs.**

9        On September 18, 2011, Brian Whitmer ("Whitmer") of Tri-Dam operations observed via video

10   surveillance two people using a Tri-Dam maintenance boat without permission at Donnell Lake, a Tri-

11   Dam reservoir in Tuolumne County, California. Doc. 96-1, Defendants' Reply in Response to Plaintiffs'

12   Response to Defendants' Separate Statement of Undisputed Material Facts in Support of Motion for

13   Summary Adjudication ("UMF"), 1-2. Whitmer contacted the Tuolumne County Sheriff's Department

14   to report a trespass, vandalism, and theft, based on Plaintiffs' apparent theft of the Tri-Dam maintenance

15   boat. UMF 1; Doc. 86-6, Declaration of David Vasquez ("Vasquez Decl."), at ¶ 4.

16       Vasquez responded to Whitmer's report. Vasquez Decl. at ¶ 4. When Vasquez arrived at the Tri-

17   Dam Operations Center, he observed Plaintiffs using the Tri-Dam boat on Tri-Dam's surveillance

18   cameras. UMF 2-3. Vasquez perceived Plaintiffs to be trespassing. Vasquez Decl. at ¶ 5.

19       Vasquez "proceeded to the Donnell Lakes Reservoir area to investigate further." *Id.* at ¶ 6. As

20   Plaintiffs approached the shore, Vasquez "noticed that Michael . . . who was driving the boat, appeared

21   to be heading back onto the lake to avoid contact with" Vasquez. *Id.* at ¶ 7. Plaintiffs eventually returned

22   to the shoreline, and Vasquez informed them "that they were not yet under arrest; rather they were being

23   ────────────────────

24   [3] Plaintiffs object to essentially every statement of material fact proffered by Defendants. *See generally* UMF 1-66. Although
     some of Plaintiffs' objections are valid, the overwhelming majority of them have no merit. Accordingly, the Court
     OVERRULES Plaintiffs' objections unless otherwise indicated. The following facts therefore are supported by admissible
25   evidence and are not credibly disputed unless otherwise indicated.

26                                        3

detained" while Vasquez "was investigating a trespass, vandalism, and the taking of a vessel without permission." *Id.* at ¶ 12; UMF 5, 7. Vasquez placed Plaintiffs "in double-locking handcuffs for safety purposes." Vasquez Decl. at ¶ 12; UMF 6. Vasquez "called Dispatch to confirm that Tri Dam wishes to press charges," and Dispatch confirmed. Vasquez Decl. at ¶ 18.

Vasquez took Plaintiffs "into custody pursuant to the citizen's arrest by Mr. Whitmer." *Id.* at ¶ 19. After informing them of their arrest, Vasquez handcuffed Plaintiffs and placed them into his patrol car. *Id.* at 21.[4] Michael informed Vasquez that he was a Vietnam War veteran and suffered from post-traumatic stress disorder ("PTSD"). UMF 15. Michael head-butted the window and kicked at it two or three times. UMF 13. Plaintiffs asked Vasquez to remove or loosen their handcuffs because they were causing Plaintiffs pain and discomfort. UMF 16.[5] Michael told Vasquez that "he was having shoulder pain and was having trouble breathing." Vasquez Decl. at ¶ 28.

Vasquez drove Plaintiffs to their campsite so they could collect some of their belongings, which took approximately five minutes. *See* Deposition of Stephen Dillman[6] ("Stephen Depo.") at 83. Vasquez then proceeded to transport Plaintiffs to the Tuolumne County Jail ("the jail") for booking. UMF 24. Along the way, Vasquez stopped at the Tri Dam Office to have Whitmer execute the citizen's arrest forms. UMF 23. Plaintiffs remained handcuffed in the backseat of the patrol car. UMF 24. After Whitmer executed those forms, Vasquez transported Plaintiffs to the jail. UMF 24.

About halfway through their transportation to the jail, Vasquez "double cuffed"[7] Michael to loosen the handcuffs. UMF 19. Stephen also claims that he made multiple requests for Vasquez to

---

[4] Plaintiffs maintain that Michael "was not 'placed into the patrol car, he was forcibly shoved into the patrol car." UMF 13.

[5] Vasquez testifies that Stephen "did not complain of pain or complications as a result of the handcuffs." Vasquez Decl. at ¶ 30.

[6] Defendants lodged the transcript of Stephen's deposition with the Court.

[7] "Double cuffing is when two pairs of handcuffs are linked together. This allows a subject to have greater movement and, ultimately, loosens the degree of the restraint." Vasquez Decl. at ¶ 29.

loosen the handcuffs or to be cuffed in the front, which Vasquez initially denied. UMF 20. However, Vasquez eventually double-cuffed Stephen around the same time he double-cuffed Michael. UMF 21. After being double cuffed, Plaintiffs did not complain about the handcuffs again. UMF 22.[8]

**B.    Plaintiffs' Detention at the Jail.**

Stephen and Michael arrived at the jail at approximately 9:00 P.M. Doc. 86-3, Declaration of Bill Pooley ("Pooley Decl."), Ex. 4 at 1. Stephen's booking took approximately five to ten minutes. UMF 26. He was then escorted to a cell. UMF 26.

During Michael's booking, Silva asked him if he was suicidal and he answered that he was suicidal. Pooley Decl., Ex. 4 at 1. Silva "told him it was a serious question and asked again if [Michael] wanted to hurt himself," and he said "Yes, I want to hurt myself." *Id.* Michael stated "if I could kill myself I would." Pooley Decl., Ex. 5 at 1.[9] Michael explained that he had not been suicidal prior to his arrest. Pooley Decl., Ex. 4 at 1 "While waiting for the on duty nurse to evaluate him [Michael] began banging his head very hard against the wall behind him." *Id.* Silva instructed him to stop, and he did. *Id.* Michael refused to talk to the nurse, and was placed into the safety cell for his own safety. *Id.*

Tuolumne County Sheriff's Procedures require that when an inmate is placed on suicide watch, his or her clothing is removed and he or she is provided a "safety gown" to wear. UMF 33. When placed in the safety cell, Michael was provided a safety gown to change into, and was told to remove his clothes and change into the safety gown. UMF 34-36. Michael removed his clothes, but did not understand how to put the gown on, so he wrapped it around his body like a towel. Pooley Decl., Ex. 7.[10]

The nurse contacted Behavioral Health. Pooley Decl., Ex. 4 at 1. Approximately an hour later, Michael agreed to come out of the safety cell. *Id.* When walking to go to booking, Michael dropped his

---

[8] Plaintiffs, however, "deny that the double cuffing did anything to 'loosen' the cuffs around [Michael's] wrists." UMF 19.

[9] Michael asserts that he "[n]ever expressed a desire to either hurt or kill himself at any time during this time at the jail." UMF 28.

[10] Exhibit seven attached to Pooley's Declaration is "a DVD of video footage taken . . . of Plaintiffs while they were being booked in [the jail]." Pooley Decl., Ex. 7 at 1. The video has been lodged with the Court, *id.*, and the Court has reviewed it.

1  safety gown in front of only Silva and Quincy. UMF 42-44. Silva asked Michael to pick up his gown

2  and Quincy asked him to "cover up." UMF 44. Plaintiffs allege that Quincy also made comments to the

3  effect of "I don't want to look at that" and "I didn't sign up for this." Deposition of Michael Dillman[11]

4  ("Michael Depo."), at 46:16-47:5.

5          Michael finished the booking process and made phone calls around 10:12 P.M. *Id.* At

6  approximately 10:19 P.M., Michael was again removed from the safety cell for a second time to talk to a

7  Behavioral Health representative, Barbara O'Neil, to determine whether he was suicidal. UMF 50;

8  Pooley Decl., Ex. 6 at 1. Following O'Neil's evaluation, Michael was cleared for release from the safety

9  cell at approximately 10:27 P.M., his clothes were returned, and he was placed into a holding cell until

10  he was released at approximately 11:08 P.M. Pooley Decl., Ex. 6 at 1; UMF 51.

11          **C.      The Jail Defendants' Interactions With Plaintiffs at the Jail.**

12          Defendants had varying degrees of involvement with Michael and Stephen during their detention

13  at the jail. Roberts "was not involved in the intake or the booking of either [Michael or Stephen]." UMF

14  61. "Roberts was present when [Michael] was placed in the safety cell. However, he did not give any

15  commands or speak to [Michael] when he was placed in the safety cell." UMF 39. "Roberts was not

16  involved in asking Michael . . . to change into a safety gown." UMF 40. Roberts did not speak with

17  Stephen, UMF 63, and his "only conversation with [Michael] was to explain to him Jail policies and

18  procedures." UMF 62.  Harrison provided Michael the safety gown. *See* UMF 38; Pooley Decl., Ex. 7.[12]

19  He had no other involvement with Michael.

20          Green periodically checked on Michael while he was in the safety cell to ensure his "well-being,

21  i.e., to see if he had water and other necessities." UMF 41. Green escorted Michael from booking back

22  to the safety cell. UMF 48. "The only conversations [Green had with [Michael] during this time period

---

[11] Defendants lodged the transcript of Michael's deposition with the Court.

[12] The parties dispute whether Harrison explained to Michael how to wear the safety gown or whether "it was simply thrown at him once he was in the padded [safety] cell." UMF 38.

was related to his return to the safety cell." UMF 48. Green informed Michael "of his upcoming court dates and showed him how to exit . . . . He had no further conversations with [Michael] during the release process." UMF 59. Michael "did not complaint about his treatment by [Green] or any other deputy during the release process." UMF 60.

Green released Stephen from custody at approximately 10:33 P.M. UMF 55. Green informed Stephen "of his upcoming court dates and showed him how to exit . . . . He did not have any further conversations with [Stephen] during the release process." UMF 56. Stephen "did not complain about how [Green] or any other [jail defendant] treated him during the release process." UMF 57.

Roos spoke with Stephen at booking. UMF 53. Roos asked Stephen for his contact information. UMF 53. He did not "find anything . . . Roos said to him offensive, inappropriate, or unnecessary." UMF 54. Likewise, "Roos acted professionally towards Michael," UMF 46, and "did not say anything to [him] that [he] thought was inappropriate for the circumstances." UMF 47.

Quincy "did not have any direct interaction with [Michael]." UMF 65. Quincy allegedly "made a derogatory statement about [Michael's] naked body." UMF 65.

Harrison "performed the initial intake interview of [Stephen]." UMF 66. Stephen "acknowledged that [Harrison] did nothing improper during the interview." UMF 66.

Harrison's only involvement with Michael pertained to instructions concerning the safety gown. *See* UMF 35-36. Defendants claim that Harrison explained to Michael that the jail's standard policy required him to put on the safety gown; Plaintiffs claim that Harrison "told [Michael] that if he didn't take his clothes off they would take them off for him." UMF 35.

### D.    Summary of Plaintiffs' Claims.

Plaintiffs bring five causes of action against Defendants. All of Plaintiffs' claims against Vasquez are premised on his conduct during Plaintiffs' arrest and transportation to the jail, whereas all of Plaintiffs' claims against the jail Defendants are premised on their conduct during Plaintiffs'

detention at the jail.

Plaintiffs' first cause of action for violation of their constitutional rights is against all Defendants and is brought under § 1983. FAC at 8-11. Plaintiffs' § 1983 claim has four primary components. First, Plaintiffs assert Vasquez unlawfully arrested them in violation of the Fourth Amendment. *Id.* at ¶¶ 16, 32. Second, Plaintiffs assert that in detaining them and transporting them to the jail, Vasquez used excessive force in violation of the Fourth Amendment. *Id.* at ¶ 28. Third, Michael asserts that Vasquez acted with deliberate indifference by refusing to accommodate Michael's medical needs in violation of the Fourteen Amendment. *Id.* at ¶ 29. Fourth, Michael asserts that the jail Defendants' conduct at the jail, particularly their strip search of him, violated his Fourteenth Amendment rights. *Id.* at ¶ 31.

Plaintiffs' second cause of action, brought under California Civil Code § 52.1 and against Marcus, Harrison, Roberts, and Silva only, alleges those Defendants violated Plaintiffs' rights under federal and California law. *Id.* at 11. Plaintiffs' third cause of action for battery is alleged against Vasquez only. *Id.* at 12. Plaintiffs' fourth cause of action for IIED is alleged against all Defendants, *id.* at 13, whereas Plaintiffs' fifth cause of action for negligence is alleged against Vasquez, Green, Harrison, Roberts, and Silva only.

**1.     Vasquez.**

As against Vasquez, Plaintiffs allege: (1) Vasquez's "conduct in the handcuffing and transporting of Plaintiffs to [the jail] violated Plaintiffs' Constitutional rights under the Fourth Amendment to be free from excessive force" in that Vasquez caused them excessive pain in handcuffing and transporting them, *id.* at ¶ 28; (2) Vasquez violated Plaintiffs' Fourth Amendment right to be free from excessive force due to unnecessary exposure to heat by placing them in his vehicle with the windows rolled up and no ventilation for over an hour during transport to the jail, *id.* at ¶ 29; and (3) Vasquez acted with deliberate indifference to Michael's medical needs in violation of the Fourteenth Amendment in that he refused to accommodate Michael's medical needs for his PTSD, claustrophobia,

8

and arthritic shoulder pain. *Id.*; *id.* at ¶ 13. In addition, although the complaint is not entirely clear,

Plaintiffs contend Vasquez's arrest of Plaintiffs constituted an unlawful seizure in violation of the Fourth

Amendment because Vasquez did not have probable cause to arrest them. *See* SAC at ¶ (Plaintiffs allege

Vasquez "lacked the necessary probable cause to arrest them"); Doc. 86-1 at 11-12 (Defendants

asserting that Vasquez lawfully arrested Plaintiffs pursuant to Whitmer's citizen's arrest); Doc. 98 at 3-5

(Plaintiffs arguing Vasquez lacked probable cause to arrest them).

> **2.      The Jail Defendants.**

As to the jail Defendants, Plaintiffs assert that the jail Defendants violated Michael's Fourth

Amendment rights "by ordering him to strip off his clothes in the presence of two (2) female [jail

personnel, Quincy and Roos,] who were not physically participating in the search but were offering

humiliating and degrading comments about [Michael's] naked body." *Id.* at ¶ 30. Plaintiffs allege

Michael also "was called a 'psycho preacher.'" *Id.* at ¶ 18. Plaintiffs claim this constituted "an

unreasonable search of [Michael's] person," *id.*, in violation of Michael's Fourth and Fourteenth

Amendment rights. *Id.* at ¶¶ 30-31.

Plaintiffs further allege that Michael was subjected to this alleged strip search "because he was

an ordained pastor accused of a crime, which a further violation of [his] rights under the First

Amendment to the free expression and observance of his religious convictions." *Id.* at ¶ 31. Plaintiffs

allege that "[i]t is against [Michael's] deeply held religious convictions to expose his naked body to

others, much less to two females, neither of whom were his wife." *Id.*

> **E.      Summary of Defendants' Motion for Summary Judgment.**

Defendants move for summary judgment on Plaintiffs' § 1983 claim as against Vasquez and the

jail Defendants.[13]

---

[13] Defendants do not address Plaintiffs' assertion that the jail Defendants violated Michael's First Amendment rights, and thus have not moved for summary judgment on that aspect of Plaintiffs' claim. Nonetheless, as discussed below, the Court finds that Plaintiffs' First Amendment argument lacks merit.

1

### 1. Vasquez.

Defendants argue that Plaintiffs' § 1983 claim as against Vasquez fails because he did not violate their constitutional rights. Specifically, Defendants assert that Plaintiffs' § 1983 claim fails for three primary reasons: (1) Vasquez was required to arrest Plaintiffs due to Whitmer's citizen's arrest; (2) Vasquez did not use unreasonable force in transporting Plaintiffs to the jail; and (3) Vasquez cannot be liable for failing to prevent Michael from having a PTSD episode while being lawfully arrested and transported to be booked. *See* Doc. 86-1 at 11-14.

### 2. The Jail Defendants.

Similarly, Defendants contend that the jail Defendants did not violate Plaintiffs' constitutional rights in any way during their time at the jail. *See id.* at 14. Defendants assert that, even assuming the truth of the FAC's allegations, there are no allegations or evidence that would support a finding that the jail Defendants violated Stephen's constitutional rights. *Id.* at 18. With regard to Michael, Defendants assert that Michael was not strip searched and, in any event, the reason he was required to remove his clothes and change into the safety gown was due to his stated desire to hurt himself and end his life. *Id.* at 18. Further, Defendants maintain that, even assuming the jail Defendants observed Michael naked and made derogatory comments about him or his body, that conduct does not amount to a constitutional violation. *See* Doc. 86-1 at 18-20. Finally, Defendants argue that they are entitled to qualified immunity from Plaintiffs' claims. *See id.* at 21.

### IV.   <u>STANDARD OF DECISION</u>

Summary judgment is appropriate when the pleadings, disclosure materials, discovery, and any affidavits provided establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that may affect the outcome of the case under the applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

1   (1986). A dispute is genuine "if the evidence is such that a reasonable trier of fact could return a verdict

2   in favor of the nonmoving party." *Id.*

3       The party seeking summary judgment "always bears the initial responsibility of informing the

4   district court of the basis for its motion, and identifying those portions of the pleadings, depositions,

5   answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes

6   demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

7   (1986) (internal quotation marks omitted). The exact nature of this responsibility varies depending on

8   whether the issue on which summary judgment is sought is one in which the movant or the nonmoving

9   party carries the ultimate burden of proof. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th

10  Cir. 2007); *Cecala v. Newman*, 532 F. Supp. 2d 1118, 1132 (D. Ariz. 2007). If the movant will have the

11  burden of proof at trial, it must demonstrate, with affirmative evidence, that "no reasonable trier of fact

12  could find other than for the moving party." *Soremekun*, 509 F.3d at 984. In contrast, if the nonmoving

13  party will have the burden of proof at trial, "the movant can prevail merely by pointing out that there is

14  an absence of evidence to support the nonmoving party's case." *Id.* (citing *Celotex*, 477 U.S. at 323).

15      If the movant satisfies its initial burden, the nonmoving party must go beyond the allegations in

16  its pleadings to "show a genuine issue of material fact by presenting *affirmative evidence* from which a

17  jury could find in [its] favor." *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis in

18  original). "[B]ald assertions or a mere scintilla of evidence" will not suffice in this regard. *Id.* at 929; *see

19  also Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the

20  moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that

21  there is some metaphysical doubt as to the material facts.") (citation omitted). "Where the record as a

22  whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue

23  for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S.

24  253, 289 (1968)).

11

1    In resolving a summary judgment motion, "the court does not make credibility determinations or

2    weigh conflicting evidence." *Soremekun*, 509 F.3d at 984. That remains the province of the jury or fact

3    finder. *See Anderson*, 477 U.S. at 255. Instead, "[t]he evidence of the [nonmoving party] is to be

4    believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* Inferences, however, are not

5    drawn out of the air; the nonmoving party must produce a factual predicate from which the inference

6    may reasonably be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal.

7    1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).

8                                          **V.    DISCUSSION**

9    **A.    Plaintiffs' § 1983 Claim.**

10              **1.    Plaintiffs' Arrest.**

11              Plaintiffs argue Vasquez did not have probable cause to arrest Plaintiffs and therefore he

12   unlawfully seized Plaintiffs in violation of their Fourth Amendment rights. Doc. 94-2 at 3. Defendants

13   assert that, under California Penal Code § 847(b) ("§ 847(b)"), Vasquez cannot be liable for any claim

14   stemming from his arrest of Plaintiffs because it was executed pursuant to Whitmer's citizen's arrest.

15   Doc. 86-1 at 11.

16              Defendants are incorrect. Section 847(b)(3) provides that a peace officer cannot be liable for a

17   state law claim for *false arrest or false imprisonment* arising out of an arrest made pursuant to a citizen's

18   arrest. *See Hamburg v. Wal-Mart Stores, Inc.*, 116 Cal. App. 4th 497, 503-04 (2004). But the Ninth

19   Circuit explicitly has held that § 847(b) does not provide a peace officer immunity from a claim that an

20   arrest violated an arrestee's constitutional rights.  In *Hopkins v. Bonvicino*, 573 F.3d 752, 774 (9th Cir.

21   2009), the Ninth Circuit was presented with the issue of "whether, under the federal Constitution, police

22   officers are required to have independent probable cause when effectuating an arrest authorized by a

23   private citizen." The Ninth Circuit explained:

24              We first addressed this question in *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912
               (9th Cir. 2001). In that case, a woman who was arrested after having an argument with a city bus

25

26                                               12

driver later brought suit under § 1983. We concluded that the "bus driver[ ] made a citizen's arrest . . . and delegated to [the][o]fficers . . . the task of taking [the plaintiff] into custody." 261 F.3d at 920. We upheld the grant of summary judgment to the officers on the plaintiff's state-law claims for false arrest because California law explicitly exempts officers effectuating a citizen's arrest from civil liability. *See* CAL. PENAL CODE § 847. However, we reversed dismissal of the plaintiff's federal claims, holding that the officers could be liable under the Fourth Amendment because they did not have sufficient independent probable cause to arrest Arpin.

*Id.* (citations omitted). The Ninth Circuit thus held in *Arpin* that "the federal Constitution requires police officers to have independent probable cause when effectuating a citizen's arrest." *Id.* Relying on *Arvin*, the Ninth Circuit held in *Hopkins* that "the defendant-officers violated [the plaintiff's] constitutional rights when they took him into custody because they did not have probable cause to support [the underlying citizen's] arrest for hit-and-run." *Id.*

Defendants have provided no argument as to whether Vasquez had probable cause to arrest Plaintiffs. *See* Doc. 86-1 at 11-12; Doc. 96 at 7. Rather, they only argue that Vasquez cannot be liable for Plaintiffs' § 1983 claim under § 847(b)—a proposition the Ninth Circuit has rejected unequivocally. Accordingly, Defendants' motion for summary judgment on Plaintiffs' § 1983 claim pertaining to their arrest is DENIED.

### 2.   Plaintiffs' Excessive Force Claim.

"Under the Fourth Amendment, police may use only such force as is objectively reasonable under the circumstances." *Cnty. of Riverside*, 204 F.3d 947, 959 (9th Cir. 2000). "Determining whether force used in making an arrest is excessive or reasonable 'requires careful attention to the facts and circumstances of each particular case,'" *id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)) and a "careful balancing of the nature and quality of the intrusion on the individuals Fourth Amendment interests against the countervailing government interests." *Graham*, 490 U.S. at 396. The "use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness." *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001).

Plaintiffs' excessive force claim is premised on their assertion that the painful manner in which

1    Vasquez handcuffed them and keeping them in his hot patrol car without rolling the windows down

2    constituted excessive force in violation of the Fourth Amendment. *See* FAC at ¶¶ 28, 29, 32. Defendants

3    have moved for summary judgment on the entirety of the claim. *See* Doc. 86-1 at 12-14. In opposition,

4    Plaintiffs only argue that, "[d]ue to the fact that there was no probable cause to arrest plaintiffs the use of

5    handcuffs in their transportation to the jail also constituted unreasonable force. This is especially true

6    given the fact that plaintiffs repeatedly complained of pain as a result of the handcuffs." Doc. 94-2 at 5.

7            **a.      Hot Patrol Car.**

8            Defendants move for summary judgment on Plaintiffs' excessive force claim premised on

9    Vasquez allegedly placing Plaintiffs in his hot patrol car and refusing to roll the window down. *See* 86-1

10   at 13. Defendants assert that "Vasquez did not violate either Plaintiff's Constitutional rights by keeping

11   the windows on the patrol car rolled up, particularly in light [of Michael's] expressed agitation." *Id.*

12   Defendants contend that "this cannot support a claim of excessive force." *Id.* Plaintiffs did not address

13   this issue in their opposition, but the FAC alleges that Vasquez's "placing . . . both Plaintiffs in the back

14   of his vehicle with the windows rolled up and no ventilation for over an hour transport, on a hot

15   September day, constituted a violation of Plaintiffs' Fourth Amendment right to be free from excessive

16   force due to unnecessary exposure to heat." FAC at ¶ 29.

17           "While the Ninth Circuit has not squarely addressed the issue of a post-arrest detention in a hot,

18   unventilated police vehicle, it appears that this conduct can constitute excessive force under the Fourth

19   Amendment." *Arias v. Amador*, __ F. Supp. 3d __, 2014 WL 6633240, at *10 (E.D. Cal. Nov. 21, 2014)

20   (citation omitted). In *Kassab v. San Diego Police Dep't*, 453 Fed. App'x 747, 748 (9th Cir. 2011), the

21   Ninth Circuit strongly suggested—if not established—that leaving an arrestee in a hot patrol can

22   constitute excessive force in violation of the Fourth Amendment. In that case, the plaintiff stated "in his

23   verified amended complaint and his declaration" that "he was detained in a police car for more than four

24   hours, with the windows rolled up, no air conditioning, and an interior temperature of 115 degrees." *Id.*

25

26
                                                          14

As a result, the plaintiff "suffered from heat stroke, had difficulty breathing, and almost passed out several times." *Id.* The Ninth Circuit reversed the district court's grant of summary judgment to the defendants, finding that a genuine issue of material fact existed as to whether defendants used excessive force in confining the plaintiff to the hot police car. *Id.*

Whereas an "unnecessary exposure to heat" may cause a constitutional violation, *see Dillman v. Tuolumne Cnty.*, No. 1:13-cv-404-LJO-SKO, 2013 WL 1907379, at \*15 (E.D. Cal. May 7, 2013) (discussing cases) ("MTD Order"), being briefly confined in uncomfortable conditions, such as a hot patrol car, does not amount to a constitutional violation. *See Estmon v. City of New York*, 371 F. Supp. 2d 202, 214 (S.D.N.Y. 2005) (finding no Fourth Amendment violation where the plaintiff was held in hot police car for ten minutes); *Frost v. Agnos*, 152 F.3d 1124, 1130 (9th Cir. 1998) (finding "without merit" pretrial detainee's "complain[t] about the temperature in his cell," where plaintiff failed to show those circumstances "ultimately deprived him of the minimal civilized measures of life's necessities). In every case finding that a plaintiff's Fourth Amendment rights were violated due to being exposed to excessive heat, the plaintiff was confined for substantially longer periods of time than were Plaintiffs. *See, e.g.*, *Burchett v. Kiefer*, 310 F.3d 937, 945 (6th Cir. 2002) (arrestee held in police vehicle for three hours in 90 degree heat); *Hope v. Pelzer*, 536 U.S. 730, 738 (2002) (prisoner tied to hitching post and exposed to sun for seven hours); *Kassab*, 453 Fed. App'x at 748 (arrestee held in police car for more than four hours). Conversely, the Fifth Circuit held that "a post-arrest detention for approximately one-half hour in an unventilated police vehicle in the sun was not in violation of the Fourth Amendment." *Arias*, 2014 WL 6633240, at \*10 (citing *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001)). Thus, the case law suggests that a brief (*e.g.*, 30-minute-long) confinement in a hot patrol car does not violate the Fourth Amendment, *see, e.g.*, *Glenn*, 242 F.3d at 314, but an extended (*e.g.*, four-hour-long) confinement in a hot police car does violate the Fourth Amendment. *See, e.g.*, *Kassab*, 453 Fed. App'x at 478.

15

1    Here, the evidence is unclear as to how long Plaintiffs were confined in Vasquez's car. The

2    record is unclear as to exactly how long Plaintiffs were in Vasquez's car. In the FAC, Plaintiffs allege

3    that their transport in Vasquez's car took "over an hour." FAC at ¶ 29. Vasquez testified that it

4    "generally takes over an hour" to get to Donnell Lakes Reservoir. Vasquez Decl. at ¶ 13. Stephen

5    testified that he estimates he and Michael were in Vasquez's car for about 2.5 hours. Stephen Depo. at

6    112:3-4. The parties agree that about halfway through their transportation Plaintiffs asked Vasquez to

7    loosen their cuffs, UMF 21, which Defendants contend that occurred "[a]pproximately one half hour"

8    after Plaintiffs' arrest, and Plaintiffs do not dispute that contention in their opposition. Thus, it appears

9    that Plaintiffs were in Vasquez's car for approximately one hour. Further, the Court takes judicial notice

10   of the fact that Donnell Lake is approximately 46 miles from the Tuolumne County Jail in Sonora,

11   California.

12   But, ultimately, the record is unclear as to how much time elapsed from the time Plaintiffs were

13   placed in Vasquez's patrol car and were taken out of the car at the jail. The record is also unclear as to

14   how hot the patrol car was during Plaintiffs' confinement in it. Although Plaintiffs allege the incident

15   took place on a hot mid-September day, the only specific evidence concerning the temperature on the

16   day of Plaintiffs' arrest is Michael's testimony that he recalls it was in the "high 80's, low 90's."

17   Michael Depo. at 53:3.

18   Nonetheless, this case falls somewhere in between the brief periods of confinement where courts

19   have found no constitutional violation occurred (*e.g.*, 30 minutes) and the extended periods of

20   confinement where courts have found a constitutional violation occurred (*e.g.*, 4 hours). But this case is

21   different from all of those cases in a critical respect: the allegedly offending officer (Vasquez) was

22   confined to the *same patrol car as Plaintiffs* for substantially the same amount of time.[14] The undisputed

23   _____

24   [14] Although theoretically possible, Plaintiffs do not suggest that the backseat of Vasquez's patrol car (where they were
     confined) was hotter than the driver's seat. As such, Vasquez was confined to an area with the same temperature as Plaintiffs

25   were.

26

1   evidence indicates that the only time Vasquez was not in his patrol car during Plaintiffs' transportation

2   to the jail was when he stopped at Tri-Dam's office to have Whitmer fill out paperwork.[15] Michael

3   testified that Vasquez stopped at the Tri-Dam office for only "six or seven minutes," Stephen Depo. at

4   55:23, and Michael testified that Vasquez stopped for only fifteen minutes. Michael Depo. at 86:19.

5          The Court is unaware of—and Plaintiffs do not provide—any authority that suggests an

6   arrestee's Fourth Amendment rights may be violated due to the temperature of the arresting police

7   officer's car where, as here, the arresting police is officer is confined to the same car (and presumably

8   the same temperature) for a substantially similar amount of time as the arrestee. Even viewing the

9   evidence in the light most favorable to the Plaintiffs, Vasquez's confining Plaintiffs to the back seat of

10  his patrol car during their arrest and transportation cannot amount to a violation of Plaintiffs' Fourth

11  Amendment rights. Accordingly, the Court GRANTS Defendants' motion for summary judgment on

12  Plaintiffs' § 1983 excessive force claim premised on Plaintiffs' confinement in Vasquez's allegedly hot

13  patrol car.

14              **b.      Handcuffing.**

15         The parties do not dispute that Vasquez loosened Plaintiffs' handcuffs approximately halfway

16  through their transportation to the jail and, after doing so, Plaintiffs did not complain about the

17  handcuffs. *See* UMF 21. Plaintiffs argue, however, that their handcuffing caused them pain and

18  discomfort prior to Vasquez loosening them.

19         Michael testified that

20     [a]t the moment [Vasquez] put the handcuffs on me, my shoulder . . . went into excruciating
       pain. The cuffs were extremely tight. And he didn't plain me in his car; he shoved me in his car,
21     in the back of his vehicle. And I landed in such a way that I was in great pain. And I appealed to
       him. I begged him, really, to please change the way he had cuffed me . . . . I said, " . . . . And you
22     can cuff me in the front. Cuff me any way you want, to make this more comfortable." But it was
       tight to my wrists, high to my back; and that is the way we started the trip down—down the
23     mountain.

24  _____

25  [15] Plaintiffs dispute Vasquez's stated reason for stopping at Tri-Dam's office, *see* UMF 23, but do not dispute that he did so.

26                                          17

Michael Depo. at 46:16-47:5.

Stephen testified that he discussed being handcuffed with Vasquez "numerous times, from the time he handcuffed us, to the time we were placed in the car, to the time we rode in the car, asking us to cuff in the front, loosen our cuffs, double-cuff. Anything he could do." Stephen Depo. 73:18-21; *see also id.* at 75:7-9 ("I was asking . . . to be loosened, handcuffed in the front, to not be cuffed at all"). Stephen explained he had "never been handcuffed before" and that it was "painful," "not comfortable," and it hurt. *Id.* at 73:22-25. Stephen considers Vasquez to have been "indifferent" to his comments about the handcuffs. *Id.* at 74:6-9. According to Stephen, in response to his requests to do something different about the handcuffs, Vasquez said: "I'm not going to release the handcuffs, I'm not going to loosen them, I'm not going to cuff you in front, I'm not going to double-cuff you." *Id.* at 20:20-22.

As this Court previously explained, "[t]he Ninth Circuit has held that excessively tight handcuffing can constitute a Fourth Amendment violation, but only where a plaintiff claims to have been demonstrably injured by the handcuffs or where complaints about the handcuffs being too tight were ignored." *Dillman v. Tuolumne Cnty.*, No. 13-cv-404-LJO-SKO, 2013 WL 1907379, at *8 (E.D. Cal. May 7, 2013) (collecting cases). The Ninth Circuit has also indicated that an excessive force claim based on a claim of tight handcuffing is not properly resolved on a motion for summary judgment because "[t]he issue of tight handcuffing is usually fact-specific and is likely to turn on the credibility of the witnesses." *LaLonde*, 204 F.3d at 960.

Although Vasquez ultimately loosened Plaintiffs' handcuffs, Plaintiffs claim he did not do so until they made many requests for him to loosen the handcuffs or handcuff Plaintiffs in a less painful manner. Even though the record is not entirely clear as to how much time had transpired before Vasquez loosened Plaintiffs' handcuffs, it is undisputed that occurred approximately halfway through Plaintiffs' transportation to the jail. And given that Donnell Lake is in "a very remote area of Tuolumne county" and "generally takes over an hour" to reach "due to the nature of the rural roads that must be used to get

1     to" it, Vasquez Decl. at ¶ 13, the undisputed evidence demonstrates that Vasquez refused to loosen

2     Plaintiffs' handcuffs for at least thirty minutes.[16]

3         *LaLonde*, 204 F.3d 947, supports Plaintiffs' excessive force claim premised on Vasquez

4     handcuffing them too tightly. In that case, the plaintiff brought an excessive force claim under § 1983

5     based, in part, on the defendant-officers' handcuffing him too tightly and refusing to loosen the

6     handcuffs for approximately 20 to 30 minutes. *See id.* at 952, 960. The district court "ignored his

7     handcuffing claim," and the Ninth Circuit reversed on appeal. *Id.* at 960. The court found that Plaintiffs'

8     handcuffing claim "should . . . have gone to the jury" because "[a]ccording to the facts alleged by [the

9     plaintiff], it is difficult, if not impossible, to say that the only reasonable conclusion that the evidence

10     permits is that the force used was reasonable." *Id.*

11         Viewing the evidence in the light most favorable to Plaintiffs, the Court finds that a genuine

12     issue of material fact exists as to whether Vasquez used excessive force in handcuffing Plaintiffs. *See id.*

13     As in *LaLonde*, the undisputed evidence shows that Plaintiffs made numerous requests for Vasquez to

14     loosen their handcuffs because they were causing Plaintiffs pain, yet Vasquez refused to loosen them for

15     at least 20 to 30 minutes. The Court cannot find that "the only reasonable conclusion that the evidence

16     permits is that the force used was reasonable." *Id.* Rather, "a reasonable jury could find that [Vasquez]

17     used an unreasonable amount of force in handcuffing [Plaintiffs] and as a result violated [their] Fourth

18     Amendment rights." *Meredith v. Erath*, 342 F.3d 1057, 1061 (9th Cir. 2003). Accordingly, the Court

19     DENIES Defendants' motion for summary judgment on Plaintiffs' § 1983 excessive force claim based

20     on Vasquez's handcuffing them too tightly.

21           **c.**     **Whether Vasquez Was Deliberately Indifferent to Michael's Medical Needs.**

22         Plaintiffs allege Vasquez's refusal to accommodate Michael's needs constitutes deliberate

23     indifference in violation of his Fourteenth Amendment rights. *Id.* at ¶ 29. Specifically, Michael alleges

24

25     [16] If Stephen's testimony ultimately is found credible, then Vasquez refused to loosen Plaintiffs' handcuffs for upwards of an hour.

26                                   19

Vasquez was deliberately indifferent when he refused to make accommodations for Michael's PTSD.[17]

*See id.*; *id.* at ¶ 13. Plaintiffs allege that Michael "pled with [Vasquez] . . . to refrain from placing [Plaintiffs] into the back of [Vasquez's] vehicle with their arms cuffed behind their backs." FAC at ¶ 14. Michael told Vasquez "that he was a Vietnam War veteran and suffered from [PTSD] and extreme claustrophobia." *Id.* at ¶ 13. Michael therefore told Vasquez "that he feared if he were placed in such a position in the back of a vehicle with the windows rolled up on a hot day . . . he would suffer a PTSD episode." *Id.*

Defendants move for summary judgment on the claim. Doc. 86-1 at 14. Defendants construe Plaintiffs' claim to assert that "Vasquez is liable under section 1983 because he failed to prevent [Michael] from having a PTSD episode." *Id.* at 14. Without citing any authority, Defendants argue that "[t]here is not . . . any duty under the Constitution or the laws of the United States to refrain from 'inducing' a PTSD episode in a[n] otherwise validly arrested arrestee, particularly when the evidence demonstrates that the only way the episode could have been prevented was for the arrest not to have been effected in the first instance." *Id.* Defendants contend that, "absent [Vasquez] not taking the Plaintiffs into custody, there is no indication that anything could have been done differently in order to prevent [Michael] from suffering an exacerbation of his PTSD." *Id.*

Defendants' argument is a straw man. Plaintiffs do not argue that Vasquez violated Michael's Fourteenth Amendment rights by failing to prevent him from having a PTSD episode. Nor do Plaintiffs argue that Vasquez should have refrained from arresting Michael altogether because doing so would cause him to suffer a PTSD episode. Rather, Plaintiffs argue that the *manner* in which Vasquez arrested Michael violated his Fourteenth Amendment rights. Specifically, Plaintiffs contend that Michael told Vasquez that handcuffing him too tightly with his hands behind his back and placing him in a hot patrol

---

[17] Plaintiffs also allege Michael suffered from arthritic pain in his shoulders and claustrophobia and Vasquez failed to accommodate those medical needs. Because Defendants have not addressed these medical needs, Vasquez is not entitled to qualified immunity to the extent Plaintiffs' claim is premised on those medical needs.

1    car without ventilation would induce a PTSD episode. Thus, contrary to Defendants' assertion, Plaintiffs

2    contend that Vasquez could have effected Plaintiffs' arrest differently and potentially could have

3    avoided Michael from suffering a PTSD episode.

4      Defendants therefore are not entitled to summary judgment on Plaintiffs' Fourteenth

5    Amendment claim because they have failed to address the elements of Plaintiffs' actual claim.

6    Nonetheless, the Court will address the merits of Plaintiffs' deliberate indifference claim because it is a

7    necessary component of Defendants' argument that Vasquez is entitled to qualified immunity from the

8    claim.

9      Michael had "the established right to not have [Vasquez] remain deliberately indifferent to [his]

10    serious medical needs." *Gibson v. Cnty. of Washoe, Nevada*, 290 F.3d 1175, 1187 (9th Cir. 2002).

11    Deliberate indifference requires the plaintiff to show (1) "a serious medical need by demonstrating that

12    failure to treat a condition could result in further significant injury or the unnecessary and wanton

13    infliction of pain," and (2) "the defendant's response to the need was deliberately indifferent." *Jett v.*

14    *Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotations omitted). The Ninth Circuit holds that

15    "the presence of a medical condition that significantly affects an individual's daily activities" constitutes

16    a serious medical need. *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir.1992), *overruled on other*

17    *grounds, WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir.1997).

18      "To demonstrate the second prong—deliberate indifference—plaintiffs must show that [Vasquez

19    was] (a) *subjectively aware* of the serious medical need and (b) failed to adequately respond." *Conn v.*

20    *City of Reno*, 591 F.3d 1081, 1096 (9th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 828 (1994))

21    (emphasis in original), *vacated*, 131 S.Ct. 1812 (2011), *reinstated in relevant part*, 658 F.3d 897 (2011).

22    "Whether [an] official had the requisite knowledge of a substantial risk is a question of fact subject to

23    demonstration in the usual ways, including inference from circumstantial evidence." *Farmer*, 511 U.S.

24    at 842.

25

26                           21

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir.2004). Indifference to "medical needs must be substantial"; "[m]ere indifference, negligence, or medical malpractice will not support this cause of action." *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980). "Isolated occurrences of neglect" do not rise to the level of an Eighth Amendment violation. *O'Loughlin v. Doe*, 920 F.2d 614, 617 (9th Cir. 1990).

PTSD has been held to constitute a serious medical condition. *Bloodworth v. Krall*, No. 09-cv-2671-MMA (CAB), 2011 WL 1043726, *4 (S.D. Cal. Mar.22, 2011). Thus, for Vasquez to receive qualified immunity from Michael's deliberate indifference claim, Defendants must show that Vasquez was not subjectively aware of Michael's PTSD or, if he was, that he responded adequately to it.

The undisputed evidence shows that, at some point during Michael's arrest and transportation to the jail, (1) he told Vasquez that he suffered from PTSD and claustrophobia; (2) that he was experiencing shoulder pain and could not breathe because of the handcuffs; (3) that he suffered an "emotional episode,"[18] during which he heat butted and kicked at the windows; (4) in response to Michael's request to loosen the handcuffs, Vasquez double-cuffed him; and (5) Michael did not complain about the handcuffs being too tight after being double-cuffed. UMF 13, 15, 18, 22. Defendants do not dispute that Michael informed Vasquez of his PTSD and, therefore, Defendants do not dispute that Vasquez was subjectively aware of Michael's PTSD. However, the parties dispute *when* Michael informed Vasquez of his PTSD: Michael contends that he informed Vasquez of his PTSD "from the very beginning of the incident," UMF 15, whereas Defendants assert that he did not state he had PTSD until he was already in Vasquez's patrol car en route to the jail. *See* UMF 13, 15.

Viewing the evidence in the light most favorable to Plaintiffs, the Court finds that a genuine issue of material exists as to whether Vasquez was deliberately indifference to Michael's medical needs. The undisputed evidence shows that Vasquez was subjectively aware of Michael's PTSD. But, given the

---

[18] Plaintiffs contend this "emotional episode" was a "PTSD episode." *See* UMF 13.p

parties' dispute as to *when* Michael informed Vasquez of his PTSD, the Court cannot assess properly

whether Vasquez acted with deliberate indifference by failing to respond adequately to Michael's PTSD.

If, for example, Michael told Vasquez that he suffered from PTSD and that he would suffer a

"PTSD episode" if he was handcuffed tightly with his hands behind his back and placed in a hot patrol

car with the windows rolled up, and Vasquez nonetheless tightly handcuffed him with his hands behind

his back and placed him the patrol car with the windows rolled up, Vasquez potentially failed to respond

adequately to Michael's PTSD. If, on the other hand, Michael did not inform Vasquez of his PTSD until

they were already into transport to the jail, a trier of fact could find that Vasquez failed to adequately

respond to Michael's PTSD because it is undisputed that he stopped his car and double-cuffed Michael

in response to Michael's complaint about the handcuffs being too tight and Michael did not complain of

pain (or any other ailment) thereafter. Accordingly, the Court finds that a triable issue of material fact

exists as to whether Vasquez acted with deliberate indifference to Michael's medical needs, namely, his

PTSD.

### 3.   Whether Vasquez Is Entitled to Qualified Immunity From Plaintiffs' § 1983 Claim.

Defendants argue Vasquez is entitled to qualified immunity from Plaintiffs' § 1983 claim

because he did not violate Plaintiffs' constitutional rights. *See* Doc. 86-1 at 21-22 ("[N]either of the

Plaintiffs were deprived of their Constitutional rights by any of the defendants . . . . Accordingly, each of

the defendants . . . are immune from suit."); Doc. 96 at 10-11. Defendants provide no further argument.

*See id.* Plaintiffs do not address the issue of whether Vasquez is entitled to qualified immunity in their

opposition.

Qualified immunity shields government officials "from liability for civil damages insofar as their

conduct does not violate clearly established statutory or constitutional rights of which a reasonable

person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The protection of qualified

immunity applies regardless of whether the government official makes an error that is "a mistake of law,

1   a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555

2   U.S. 223, 231 (2009) (internal quotation and citation omitted). "The principles of qualified immunity

3   shield an officer from personal liability when an officer reasonably believes that his or her conduct

4   complies with the law." *Id.* at 245.

5          To determine if qualified immunity applies, the Court must ask (1) "whether the facts that a

6   plaintiff has . . . shown . . . make out a violation of a constitutional right," and (2) "whether the right at

7   issue was 'clearly established' at the time of defendant's alleged misconduct." *Wilkinson v. Torres*, 610

8   F.3d 546, 550 (9th Cir. 2010) (quoting *Pearson*, 555 U.S. at 232). Thus, "[t]he threshold inquiry in a

9   qualified immunity analysis is whether the plaintiff's allegations, if true, establish a constitutional

10  violation." *Wilkins v. City of Oakland*, 350 F.3d 949, 954 (9th Cir. 2003). But "[t]he relevant, dispositive

11  inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable

12  officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202

13  (2001). Even if an officer's conduct does violate the Constitution, "a reasonable but mistaken belief that

14  his conduct was lawful would result in the grant of qualified immunity." *Wilkins*, 350 F.3d at 955.

15  Because qualified immunity is an affirmative defense, the defendant bears the burden of establishing

16  entitlement to it. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980) ("Since qualified immunity is a defense,

17  the burden of pleading it rests with the defendant.").

18          a.      **Arrest.**

19          It is well established that "an arrest without probable cause violates the Fourth Amendment and

20  gives rise to a claim for damages under § 1983." *Borunda v. Richmond*, 885 F.2d 1384, 1391 (9th Cir.

21  1988). An officer who makes an arrest without probable cause, however, may still be entitled to

22  qualified immunity if he or she reasonably believed there to have been probable cause. *See Ramirez v.*

23  *City of Buena Park*, 560 F.3d 1012, 1024 (9th Cir. 2009).

24          As discussed above, Defendants have put forth no argument or evidence concerning whether

25

26                                                      24

1    Vasquez *believed* he had probable cause to arrest Plaintiffs. Rather, Defendants only assert that Vasquez

2    as "obligated to take the Plaintiffs into custody" pursuant to Whitmer's citizen's arrest under California

3    Penal Code § 142. Doc. 86-1 at 12. Accordingly, Vasquez is not entitled to qualified immunity from

4    Plaintiffs' unlawful arrest claim.

5          **b.**    **Excessive Force—Handcuffs.[19]**

6          As explained above, "[t]he Ninth Circuit has held that excessively tight handcuffing can

7    constitute a Fourth Amendment violation, but only where a plaintiff claims to have been demonstrably

8    injured by the handcuffs or where complaints about the handcuffs being too tight were ignored." *Arias*,

9    2014 WL 6633240, at *11 (citing MTD Order, 2013 WL 1907379, at *8 (collecting cases)). Plaintiffs'

10   right to be free excessive force through the use of handcuffs was clearly established at the time Vasquez

11   arrested them. *See, e.g.*, *Hansen v. Black*, 885 F.2d 642, 645 (9th Cir. 1989) ("[T]he officers used excess

12   force on Hansen by unreasonably injuring her wrist and arm as they handcuffed her."). Further, Vasquez

13   reasonably would have known that using excessively tight handcuffs on Plaintiffs violates the Fourth

14   Amendment. *See Meredith*, 342 F.3d at 1061 ("[I]t was clearly established that the amount of force . . . .

15   used in handcuffing [the plaintiff-arrestee] was excessive, and a reasonable agent in [the defendant-

16   officer's] position would have known that such conduct violated the Fourth Amendment."").

17   Accordingly, Vasquez is not entitled to qualified immunity from Plaintiffs' excessive force claim. *See*

18   *id.*

19         **c.**    **Deliberate Indifference to Michael's Medical Needs.**

20         Because a triable issue of material fact exists as to whether Vasquez acted with deliberate

21   indifference toward Michael, Defendants are not entitled to qualified immunity on Plaintiffs' deliberate

22   indifference claim. *See Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1045 (9th Cir. 2002) ("We

23   held in *Hamilton v. Endell*, 981 F.2d 1062 (9th Cir. 1992), that a finding of deliberate indifference (or of

24   

---

25   [19] Because the Court finds that Vasquez did not violate Plaintiffs' constitutional rights in confining them to his patrol car, the Court need not address whether he is entitled to qualified immunity from that claim. *See Wilkins*, 350 F.3d at 954.

26

1  a triable issue as to it) necessarily precludes a finding of qualified immunity.").

2  **B.    Plaintiffs' Battery Claim.**

3         Plaintiffs assert their third cause of action for battery against Vasquez only. FAC at 12. Plaintiffs

4  assert that the excessive force Vasquez used to effect Plaintiffs' arrest (namely, Vasquez's use of

5  handcuffs on Plaintiffs) constitutes a battery. *See id.* at ¶ 43.

6         Defendants move for summary judgment on the claim. Doc. 86-1 at 24. Defendants assert that,

7  because Vasquez's use of force was lawful, Plaintiffs' battery claim fails. *See id.* at 24-25. Specifically,

8  Defendants assert that "the only force used by [Vasquez] was the use of handcuffs on both of the

9  Plaintiffs," which was "reasonable in light of the circumstances facing [him]." *Id.* at 25. Defendants

10 provide no other argument. *See id.* at 24-25; Doc. 96 at 7.

11        Because the Court finds that a genuine issue of material fact exists as to whether Vasquez used

12 excessive force in handcuffing Plaintiffs, Defendants are not entitled to summary judgment on Plaintiffs'

13 battery claim. As the Court previously explained, "[i]n the context of a peace officer's use of force, '[a]

14 state law battery claim is [the] counterpart to a federal claim of excessive use of force[,]' and similar

15 standards apply." MTD Order at *21. Thus, Plaintiffs' "battery claim against [Vasquez] survives to the

16 extent their Fourth Amendment excessive force claim survives." *Id.* Accordingly, Defendants' motion

17 for summary judgment on Plaintiffs' battery claim is DENIED.

18 **C.    Plaintiffs' IIED and Negligence Claims Against Vasquez.**

19        To state a claim of IIED against Vasquez, Plaintiffs must establish that "there is '(1) extreme and

20 outrageous conduct by the defendant with the intention of causing, or reckless disregard of the

21 probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional

22 distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous

23 conduct.'" *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (citations omitted). "A defendant's conduct is

24 'outrageous' when it is so 'extreme as to exceed all bounds of that usually tolerated in a civilized

25

26
                                                26

1    community' . . . . And the defendant's conduct must be 'intended to inflict injury or engaged in with the

2    realization that injury will result.'" *Id.* (citations and quotation marks omitted).

3           Among other reasons, Defendants move for summary judgment on Plaintiffs' claim against

4    Vasquez on the ground that Vasquez's conduct cannot, as a matter of law, constitute "extreme and

5    outrageous conduct." *See* Doc. 86-1 at 26. But as the Court previously noted, excessive force may

6    constitute outrageous conduct and give rise to a claim for IIED. *See* MTD Order at 29-30 (citing

7    *Blankenhorn v. City of Orange*, 485 F.3d 463, 487 n.17 (9th Cir. 2007) (holding district court's grant of

8    summary judgment to officer-defendant on the plaintiff's IIED claim was improper because a genuine

9    issue of material fact existed as to whether office-defendant used excessive force)). Thus, Defendants

10   have failed to establish that they are entitled to summary judgment on Plaintiffs' IIED claim.

11          Likewise, because a genuine issue of material fact exists as to whether Vasquez used excessive

12   force in arresting Plaintiffs, Defendants are not entitled to summary judgment on Plaintiffs' negligence

13   claim. *See Burns v. City of Redwood City*, 737 F. Supp. 2d 1047, 1067 (N.D. Cal. Aug. 25, 2010)

14   (denying the officer-defendants' motion for summary judgment on the plaintiff's negligence claim

15   because a genuine issue of material fact existed as to whether the officer-defendants used excessive

16   force in arresting the plaintiff).

17          Accordingly, the Court DENIES Defendants' motion for summary judgment on Plaintiffs' IIED

18   and negligence claims against Vasquez.

19   **D.      The Jail Defendants.**

20           **a.      Plaintiffs Concede That Green, Roos, and Roberts Are Entitled to Summary
                        Judgment on All of Plaintiffs' Claims.**

21

22          Plaintiffs explicitly concede that Green, Roos, and Roberts did not violate their rights or

23   otherwise cause Plaintiffs any injury. *See* Doc. 94-2 at 6 ("Plaintiffs believe that their constitutional

     rights were not violated by Deputies Green, Roos, and Roberts and thereby withdraw those individuals

24   as defendants herein."). Accordingly, they are entitled to summary judgment on Plaintiffs' first cause of

25

26
                                                    27

1    action.

2               **b.      Stephen's Claims Against the Remaining Jail Defendants.**

3         Even viewing the undisputed evidence in the light most favorable to Plaintiffs, there is no

4    genuine issue of material fact as to whether the jail defendants' violated Stephen's constitutional or civil

5    rights. The Court finds that, based on the undisputed evidence and viewing that evidence in the light

6    most favorable to Stephen, the jail defendants did not violate his constitutional or civil rights. By

7    Stephen's own admission, Harrison acted in a fully professional manner in all of his interactions with

8    Stephen, and there is no evidence that either Silva or Quincy interacted with Stephen. Notably, Plaintiffs

9    make no argument in their opposition to Defendants' motion for summary judgment that the jail

10   Defendants violated Stephen's constitutional or civil rights. *See generally* Doc. 94-2 at 7 at 10. Nor do

11   Plaintiffs make any argument that the jail Defendants were negligent toward Stephen.

12        Simply put, Plaintiffs have not proffered any argument or evidence that the jail Defendants acted

13   in an improper, offensive, negligent, or otherwise unlawful manner.  As such, there is no evidence that

14   would support a finding that the jail Defendants are liable for any of Stephen's claims against them.

15   Accordingly, the jail defendants are entitled to summary judgment on all of Stephen's claims against

16   them.

17              **c.      Michael 's Claims Against the Remaining Jail Defendants.**

18        The basis for all of Michael's claims against the jail Defendants stem from (1) the jail

19   Defendants' alleged strip search of Michael; (2) comments made during that strip search; and (3) their

20   confining him in a cell naked for a prolonged period. *See* FAC at ¶¶ 18, 30-35, 37, 49, 60, 65.

21   Defendants move for summary judgment on Michael's claims against the jail Defendants.[20] *See* Doc. 86-

22

23   ─────────────────────

24   [20] Defendants do not address Michael's First Amendment claim. However, as discussed below, the undisputed evidence
     establishes that Defendants' purpose in requesting that Michael change into the safety gown was due to his perceived suicidal
     ideation. There is no indication that Defendants required Michael to do so due to his religious convictions, and Plaintiffs'

25   unsupported speculation to the contrary does not create a genuine issue of material fact on that issue. As such, Michael's First
     Amendment claim has no support.

26

1 at 16-22.

As a threshold matter, the indisputable video evidence establishes that Michael was not subjected to a strip-search. Rather, as Defendants contend, the jail security camera footage shows that Michael walked approximately ten feet into the safety cell while the jail Defendants stayed in the hallway or in the doorway. Harrison tossed the safety gown into the cell and Michael attempted to change into it, but apparently could not put it on correctly and instead wrapped it around him like a towel. The jail Defendants did not force him to remove his clothes, nor did they forcibly do so themselves. None of the female jail Defendants were present when Michael changed into the safety gown. In sum, there is no evidence that any of the jail Defendants searched Michael. There also is no evidence that he was confined to a cell naked for an extended period of time.

To the extent Plaintiffs assert the comments concerning Michael's body that Quincy allegedly made when he was naked or changing into the safety gown violated his constitutional rights, the Court disagrees. According to Plaintiffs, Quincy said things to the effect of "I don't want to see that" and "I didn't sign up for this" when Michael dropped his gown (and was therefore naked) in front of Quincy. Defendants claim that Quincy only said "cover up" to Michael. Even assuming Quincy said what Plaintiffs assert she said, her comments cannot form the basis of a constitutional violation. *See Dixie v. Castro*, No. 1:14-cv-1255-BAM (PC), 2015 WL 521389, at *5 (E.D. Cal. Feb. 9, 2015) ("Mere verbal harassment or abuse, including the use of racial epithets, does not violate the Constitution and, thus, does not give rise to a claim for relief under 42 U.S.C. § 1983.") (citing *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987)). And Plaintiffs do not provide—and the Court cannot find—any authority to support Plaintiffs' position that the statements Quincy allegedly made can form the basis of an IIED or negligence claim.

Simply put, as with Stephen, there is no evidence that the jail Defendants acted in an improper,

29

offensive, negligent, or otherwise unlawful manner toward Michael. Accordingly, the jail Defendants are entitled to summary judgment on all of Michael's claims against them.[21]

**CONCLUSION AND ORDER**

For the foregoing reasons, the Court ORDERS that:

1.     Defendants' motion for summary judgment on Plaintiffs' § 1983 claim against Vasquez is GRANTED IN PART in Defendants' favor and against Plaintiffs and DENIED IN PART. The Court GRANTS in Defendants' favor and against Plaintiffs Defendants' motion for summary judgment on Plaintiffs' excessive force claim to the extent it is premised on Vasquez confining Plaintiffs to his patrol car. The Court DENIES Defendants' motion for summary judgment on Plaintiffs' claims against Vasquez in all other respects; and

2.     The jail Defendants' motion for summary judgment on Plaintiffs' claims is GRANTED in the jail Defendants' favor and against Plaintiffs.

The Court asks counsel for Plaintiffs to be mindful of his obligations as an officer of this Court. Counsel failed on numerous occasions to respond to counsel for Defendants' requests to meet and confer. *See* Doc. 86-4 at 2-3. Counsel also failed to timely meet Court-ordered deadlines, and failed to file documents properly or failed to file them altogether. *See generally* Doc. 97. In doing so, counsel repeatedly violated Court orders and this Court's Local Rules. Counsel is on notice that further violations of the Court's orders and Local Rules will have consequences.

IT IS SO ORDERED.

Dated:   **February 27, 2015**                    ____/s/ Lawrence J. O'Neill____
                                                                  UNITED STATES DISTRICT JUDGE

---

[21] Neither party addressed Michael's First Amendment claim alleged in the FAC. *See* FAC at ¶ 31. But, to the extent Michael argues that the jail Defendants' requiring Michael to change into the safety gown in front of them violated his First Amendment rights, the claim fails. As discussed, the jail Defendants asked Michael to do so because of the perceived risk of harm that he posed to himself. Their request that Michael change into the safety gown in their presence therefore was rationally related to a legitimate penological interest in maintaining his safety. *See Turner v. Safley*, 482 U.S. 78, 89 (1987) (holding that a regulation that impinges on an inmate's First Amendment rights "is valid if it is reasonably related to legitimate penological interests"); *Hall v. Bellmon*, 935 F.2d 1106, 1113 (9th Cir. 1991) (upholding jail regulation prohibiting inmates from possessing sharp objects because it was "reasonably related to the legitimate penological interest . . . [of] preventing suicide attempts"). As such, the jail Defendants are entitled to summary judgment on Michael's First Amendment claim.